UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ X

THE PENN MUTUAL LIFE
INSURANCE CO.,

           **Plaintiff,**

      - against -

EDMUND F. WOLK, as trustee of the
MYRON WALD IRREVOCABLE
TRUST dated 04/02/07,

          **Defendant.**

------------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 1808 (SAS)**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/15/10
```

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

The Penn Mutual Life Insurance Company ("Penn Mutual") brings

this action against Edmund F. Wolk, trustee of the Myron Wald Irrevocable Trust

dated April 2, 2007 ("the Trust"), in connection with a life insurance policy ("the

Policy") purchased by the Trust and issued on the life of Myron Wald.  Penn

Mutual seeks declaratory judgment on whether the Policy is void or voidable due

to material misrepresentations in the application for the Policy ("the Application")

and whether the Policy is void or voidable due to a lack of insurable interest at the

inception of the Policy.[1]  Penn Mutual also requests damages in connection with

its fraud claim.  Wolk now seeks to dismiss the Second Amended Complaint.  For

the reasons discussed herein, the motion to dismiss is denied.

## II.    BACKGROUND[2]

Penn Mutual is a Pennsylvania-based life insurance company.[3]  Wald

is a natural person on whose life Penn Mutual issued the Policy.[4]  The Trust, as

created by Wald, is the owner and beneficiary of the Policy.[5]  Wolk is an attorney

formerly serving as trustee of the Trust.[6]  Jonathan Berck is a payor of certain

premiums under the Policy.[7]  The Complaint does not include a specific

---

[1]      Though the parties discuss at length the issue of Penn Mutual's
retention of premiums, the question of whether Penn Mutual is thereby estopped
from rescinding the Policy may not be resolved at this stage of the litigation.  On a
motion to dismiss, I need only determine whether the facts as alleged plausibly
support the claims asserted – in this case, declaratory judgment under New York
Insurance Law ("NYIL") sections 3105 and 3205 and common-law fraud.

[2]      The facts as presented are presumed to be true for purposes of this
motion.

[3]      *See* Second Amended Complaint ("SAC") ¶ 2.

[4]      *See id.* ¶ 1.

[5]      *See id.* ¶¶ 3, 24.

[6]      *See id.* ¶ 3.

[7]      *See id.* ¶¶ 39-42.  Counsel for Wolk states that Wolk is no longer the
trustee of the Trust and that Berck is the current trustee.  *See* Wolk Memorandum

identification of Alvin Block.

Prior to May 31, 2007, Wald attended a lunch meeting with Block.[8] During this meeting, Wald and Block discussed a plan for Wald's possible participation in a STOLI scheme.[9] This plan included Wald's application to Penn Mutual for the Policy to be issued on his own life as well as Wald's concealment from Penn Mutual of his intent to sell the Policy and/or an interest in the Policy to an investor in the secondary market.[10] Wald and Block also discussed creating the Trust as a vehicle to sell the Policy in the secondary market and to conceal the true purpose of the Policy.[11]

Wald and Block communicated several times prior to Wald's completion of the Application to discuss the plan to sell the Policy to a third-party

---

of Law in Support of the Motion to Dismiss ("Def. Mem.") at 4, n. 3.

[8]     *See* SAC ¶ 16.

[9]     *See id.* "STOLI" is an acronym for "stranger-originated life insurance," a practice by which an insured unlawfully procures a policy for the "sole purpose of transferring it, directly or indirectly, to an investor," who has no legally-recognized interest in the life of the insured and stands to profit at the death of the insured. *Id.* ¶¶ 6-7.

[10]    *See id.* ¶ 16.

[11]    *See id.* ¶ 19.

3

investor soon after its issue.[12]  Wald and Block also discussed the remuneration –

3% of the face amount of the Policy – Wald would receive in exchange for his

participation in the STOLI scheme.[13]  At Block's request, Wald provided medical

information and undertook a physical examination prior to completing the

Application.[14]

On April 2, 2007, Wald created the Trust.[15]  On May 31, 2007, at the

age of seventy-seven, Wald applied to Penn Mutual for a $5 million life insurance

policy.[16]  The Application listed retirement income, estate planning, and income

replacement as Wald's reasons for seeking the Policy;[17] listed the Trust as the

intended owner of the Policy, with Wolk as trustee;[18] indicated that the primary

source of funds would be Wald's current income and savings;[19] and stated that the

---

[12]    *See id.* ¶ 17.

[13]    *See id.* ¶¶ 18, 20.

[14]    *See id.* ¶ 21.

[15]    *See id.* ¶ 25.

[16]    *See id.* ¶ 22; *see also* Wald Application for Life Insurance, included with The Penn Mutual Life Insurance Company Flexible Premium Life Insurance Policy (listing Myron Wald as the insured), Ex. A to the SAC.

[17]    *See* SAC ¶ 23.

[18]    *See id.* ¶ 24.

[19]    *See id.* ¶ 29.

payor was to be the Wald Trust.[20]   The Application also included two questions particularly intended to discern whether Wald had applied for the Policy simply to resell it in the secondary market.[21]   Wald and/or the Wald Trust answered in the negative to each.[22]

Penn Mutual approved the Application on February 28, 2007 for a policy in the amount of $3 million.[23]   Shortly after the issuance of the Policy, Wald "took all of the steps necessary to effectuate a transfer of the [Policy], or the beneficial interest in the [Policy], to an investor whom [Wald] did not know prior to completing the Application."[24]   Wald received at least $60,000 in remuneration for this transfer and has relinquished or agreed to relinquish any beneficial interest

---

[20]     *See id.* ¶ 30.

[21]     *See id.* ¶ 27.  The Application includes the following two questions:

> Have you been involved in any discussion about the possible sale or assignment of this policy to a Life Settlement, Viatical or other secondary market provider?

> Have you in the past 2 years sold a policy to a Life Settlement, Viatical or other secondary market provider?

*Id.* ¶ 26; *see also* Application, Ex. A to the SAC.

[22]     *See* SAC ¶ 28.

[23]     *See id.* ¶ 31.

[24]     *Id.* ¶ 32.

in the proceeds of the Policy and all interests in the Trust.[25]

On September 10, 2007, Penn Mutual received a premium payment of $197,550 by wire from Wolk.[26]  On February 7, 2008, Penn Mutual received a premium payment of $30,000 from Berck.[27]  On August 18, 2008, Penn Mutual sent a letter to Wald advising that Penn Mutual would be auditing the Policy.[28] Penn Mutual thus requested that Wald contact Penn Mutual to provide certain information concerning the Policy.[29]  Wald failed to respond to Penn Mutual's request.[30]  On February 24, 2009, Penn Mutual received a premium payment of $55,000 by wire, also from Berck.[31]  Penn Mutual has thus received an aggregate

---

[25]     *See id.* ¶¶ 33-34.

[26]     *See id.* ¶ 38.

[27]     *See id.* ¶ 39.

[28]     *See id.* ¶ 35.

[29]     *See id.* ¶ 36.

[30]     *See id.*

[31]     *See id.* ¶ 40. The parties do not dispute that Penn Mutual has since sent the Trust a check for $55,000. *See* Def. Mem. at 10, note 7 ("Evidently feeling its vulnerability on this point after the pre-motion letters, Penn Mutual has now, *eight months later*, sent the Trust a check for $55,000.") (emphasis in original); Penn Mutual Memorandum of Law in Opposition to the Motion to Dismiss ("Opp. Mem.") at 9 ("[P]rior to the filing of its motion, the Wald Trust was aware of Penn Mutual's position, had seen the complaint, and had received a return of the $55,000 in premium.").

6

of $257,550 in premium payments in connection with the Policy.[32]  Penn Mutual

commenced this action on February 26, 2009.

## III.  APPLICABLE LAW

### A.  Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court

must "accept as true all of the factual allegations contained in the complaint"[33] and

"draw all reasonable inferences in [the] plaintiff[s'] favor."[34]  Nevertheless, the

court need not accord "[l]egal conclusions, deductions or opinions couched as

factual allegations . . . a presumption of truthfulness."[35]  To survive a Rule

12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard

of "plausibility."[36]  A claim is facially plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

---

[32]     *See* SAC ¶ 43.  The Trust correctly notes that this sum is incorrect and
that the three alleged premium payments total $282,550.  *See* Def. Mem. at 5, n.4.

[33]     *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).  *Accord
Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 127 (2d Cir. 2009).

[34]     *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298
(2d Cir. 2006).

[35]     *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007)
(quotation marks omitted).

[36]     *Twombly*, 550 U.S. at 564.

liable for the misconduct alleged."[37]  Plausibility "is not akin to a probability

requirement"; rather, plausibility requires "more than a sheer possibility that a

defendant has acted unlawfully."[38]

When determining the sufficiency of a claim under Rule 12(b)(6), the

court is normally required to consider only the allegations in the complaint.  Even

so, the court is allowed to consider documents outside the pleading if the

documents are integral to the pleading or subject to judicial notice.[39]

## B.  Declaratory Judgment Act (28 U.S.C. § 2201)

Section 2201(a) provides, in relevant part:

> In a case of actual controversy within its jurisdiction  . . .
> any court of the United States, upon the filing of an
> appropriate pleading, may declare the rights and other legal
> relations of any interested party seeking such declaration,
> whether or not further relief is or could be sought. Any
> such declaration shall have the force and effect of a final
> judgment or decree and shall be reviewable as such.

An "actual controversy" is defined by the Second Circuit as one that is "'real and

substantial . . . admitting of specific relief through a decree of a conclusive

---

[37]  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted).

[38]  *Id.* (quotation marks omitted).

[39]  *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"[40]  A declaratory judgment action is ripe for adjudication where "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[41]  "The Second Circuit has repeatedly held that in order to decide whether to entertain an action for declaratory judgment, a District Court must ask: (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."[42]

"That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action. Rather, courts should focus on the practical likelihood that the contingencies will occur."[43]  "Indeed, litigation over insurance coverage has become the paradigm for asserting jurisdiction despite

---

[40]  *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001) (quoting *Olin Corp. v. Consolidated Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir. 1993)).

[41]  *Kramer v. Lockwood Pension Servs.*, 653 F. Supp. 2d 354, 375-76 (S.D.N.Y. 2009) (citing *Duane Reade, Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005)) (quotation marks omitted).

[42]  *Id.*

[43]  *E.R. Squibb & Sons*, 241 F.3d at 177 (citing *Associated Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992)).

future contingencies that will determine whether a controversy ever actually

becomes real."[44]

## C.    New York Insurance Law § 3105

Section 3015 of the NYIL provides, in relevant part:

(a) A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

(b) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.

(c) In determining the question of materiality, evidence of the practice of the insurer which made such contract with respect to the acceptance or rejection of similar risks shall be admissible.

## D.    New York Insurance Law § 3205

NYIL section 3205 provides, in relevant part:

(a) In this section:
  (1) The term, "insurable interest" means:
    (A) in the case of persons closely related by blood

---

[44]    *Id.* (citation omitted).

or by law, a substantial interest engendered by love and affection;

(B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured.

(b) (1) Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated.

(2) No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of insurance upon the person of another unless the benefits under such contract are payable to the person insured or his personal representatives, or to a person having, at the time when such contract is made, an insurable interest in the person insured . . .

(4) If the beneficiary, assignee or other payee under any contract made in violation of this subsection receives from the insurer any benefits thereunder accruing upon the death, disablement or injury of the person insured, the person insured or his executor or administrator may maintain an action to recover such benefits from the person receiving them.

## E.    Fraud

"Under New York law, to state a claim for fraud a plaintiff must

11

demonstrate: (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff."[45]

## IV. DISCUSSION

### A. The Declaratory Judgment Claims Are Proper

Penn Mutual and the Trust are engaged in an actual controversy regarding the Policy. That liability is contingent on future events – namely, the life span, health, or safety of Wald – does not bar the declaratory judgment claims.[46] As Penn Mutual seeks a declaration of the parties' rights under a potentially-void insurance contract prior to Wald's death, disability, or injury, this is an appropriate circumstance for declaratory judgment. Resolution of such claims would (1) serve a useful purpose in clarifying or settling whether the Policy is valid, and (2) finalize the controversy and thus offer relief from uncertainty upon the disability, injury, or decease of Wald.[47]

---

[45]    *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

[46]    *See E.R. Squibb & Sons*, 241 F.3d at 177 (citation omitted).

[47]    *See Kramer*, 653 F. Supp. 2d at 375-76 (citation omitted).

12

**B.      Penn Mutual Has Sufficiently Alleged Facts to Support a Claim
          for Declaratory Judgment Under NYIL Section 3015**

          Penn Mutual has sufficiently alleged material misrepresentation under

section 3015 of the NYIL. *First*, Penn Mutual alleges that Wald falsely answered

in the negative two Application questions directly inquiring whether Wald had

ever engaged in discussions to sell the Policy in the secondary market,

misrepresented the source of the funds, and misrepresented his purpose in

obtaining the policy.[48]   *Second*, Penn Mutual claims that Block approached Wald

to create a plan involving Wald's sale of the Policy to an investor in the secondary

market and that Wald and the Trust completed the Application subsequent to these

discussions.[49]  *Third*, Penn Mutual further alleges that had it known of the true

reason for Wald seeking the Policy, the actual source of funds for premium

payments, and Wald's engagement with strangers to the Policy, Penn Mutual

would not have issued the Policy.[50]  Penn Mutual has thus sufficiently alleged that

Wald (1) made "a statement as to past or present fact . . . at or before the making

of the insurance contract as inducement to the making thereof," and (2) that the

---

[48]      *See* SAC ¶ 22.

[49]      *See id.* ¶ 16.

[50]      *See id.* ¶ 47.

statement was a material misrepresentation.[51]

## C.   Penn Mutual Has SufficientlyAlleged Facts to Support a Claim for Declaratory Judgment Under NYIL Section 3205

Penn Mutual has sufficiently alleged a lack of insurable interest under section 3205 of the NYIL to uphold a claim for declaratory judgment. Though Wald may transfer his life insurance policy under section 3205, the assignee/beneficiary must have an interest in the continued life, safety, and health of the insured and must not simply stand to profit upon the insured's death, disability, or injury.[52] Penn Mutual alleges, however, that Wald created the Trust to be "a vehicle to sell the [P]olicy to an investor in the secondary market, and . . . to conceal this true purpose . . . ."[53] Penn Mutual further claims that Wald was offered and received a fee for selling the policy to a stranger investor in the secondary market.[54] Finally, Penn Mutual alleges that shortly after the issuance of the Policy, Wald "took all of the steps necessary" to transfer the Policy to "an investor whom [Wald] did not know prior to completing the Application."[55] In

---

[51]   NYIL § 3105.

[52]   *See id.* § 3205(b)(1)-(2).

[53]   SAC ¶ 19.

[54]   *See id.* ¶¶ 20, 33.

[55]   *Id.* ¶ 32.

14

addition, Penn Mutual alleges that the premium payments on September 10, 2008

and February 7, 2008 "were paid for the benefit of individuals and/or entities other

than the insured, the owner of the policy, and/or any other person or entity with an

insurable interest in the life of [Wald]."[56]  As such, Penn Mutual has sufficiently

alleged that Wald and/or the Trust transferred the Policy to individuals lacking any

insurable interest in Wald.

## D.     Penn Mutual Has Sufficiently Alleged Facts to Support a Claim of Fraud

Penn Mutual has alleged (1) misrepresentation on the Application of

material facts that Wald and/or the Trust (2) knew to be false when made, and (3)

made with the intention of inducing Penn Mutual's reliance for the purposes of

obtaining the Policy.[57]  Penn Mutual alleges that it relied upon the Application in

its decision to issue the Policy and further alleges that it has "incurred substantial

damages . . . including . . . costs and expenses associated with the issuance of the

[Policy]."[58]  As such, Penn Mutual has sufficiently alleged plausible facts

supporting a fraud claim.

---

[56]     *Id.* ¶ 40.

[57]     *See id.* ¶¶ 23-30.

[58]     *Id.* ¶ 64.

15

## V.    CONCLUSION

For the reasons stated herein, the motion to dismiss is denied. The Clerk of

the Court is directed to close this motion [Docket #16]. A conference is scheduled

for June 29, 2010 at 4:30pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             June 15, 2010

16

## - Appearances -

**For Plaintiff:**

Katherine Leigh Villanueva, Esq.
DRINKER, BIDDLE & REATH LLP
One Logan Square, 18th and Cherry Streets
Philadelphia, PA 19103
(215) 988-2528

Stephen C. Baker, Esq. (admitted *pro hac vice*)
DRINKER, BIDDLE & REATH LLP
One Logan Square, 18th and Cherry Streets
Philadelphia, PA 19103
(215) 988-2769

Jarrod D. Shaw, Esq. (admitted *pro hac vice*)
DRINKER, BIDDLE & REATH LLP
One Logan Square, 18th and Cherry Streets
Philadelphia, PA 19103
(215) 988-2587

**For Defendant:**

Peter Jakab, Esq.
FEIN & JAKAB
The Woolworth Building
233 Broadway, Suite 930
New York, NY 10279
(212) 732-9290

Anthony J. Harwood, Esq.
100 Park Avenue, 18th Floor
New York, NY 10017
(212) 867-6820

17